## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**AUTHER (ARTHUR) WILLIAMS #192153**          **CIVIL ACTION**

**versus**                                   **NO. 05-1921**

**N. BURL CAIN, WARDEN**                     **SECTION: "F" (1)**

### REPORT AND RECOMMENDATION

   This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

 [1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Auther Williams,[2] is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On May 24, 1999, he was convicted of armed robbery in violation of La.Rev.Stat.Ann. § 14:64.[3]  On September 21, 1999, he was found to be a third offender.[4]  On September 24, 1999, he was sentenced as a habitual offender to a term of life imprisonment, without benefit of probation, parole, or suspension of sentence, with credit for time served.[5]  On November 7, 2001, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[6]  He then filed with the Louisiana Supreme Court an application for a writ of certiorari[7] which was denied on February 14, 2003.[8]

On June 17, 2003, petitioner filed with the state district court an application for post-conviction relief.[9]  That application was denied on October 24, 2003.[10]  He then filed with the

---

[2]  In both his petition and the state court record, petitioner is referred to as both "Auther Williams" and "Arthur Williams."

[3]  State Rec., Vol. II of III, transcript of May 24, 1999, p. 83; State Rec., Vol. II of III, minute entry dated May 24, 1999.

[4]  State Rec., Vol. II of III, minute entry dated September 21, 1999.

[5]  State Rec., Vol. II of III, minute entry dated September 24, 1999.

[6]  State v. Williams, No. 2000-KA-2148 (La. App. 4th Cir. Nov. 7, 2001) (unpublished); State Rec., Vol. II of III.

[7]  State Rec., Vol. III of III.

[8]  State v. Williams, 836 So.2d 135 (La. 2003) (No. 2002-KO-0174); State Rec., Vol. III of III.

[9]  State Rec., Vol. I of III.

[10]  State Rec., Vol. I of III, minute entry dated October 24, 2003.

Louisiana Fourth Circuit Court of Appeal an application for a writ of review[11] which was denied on December 23, 2003.[12]  He next filed with the Louisiana Supreme Court an application for a writ of certiorari[13] which was denied on March 11, 2005.[14]

On April 11, 2005, petitioner filed this federal application for *habeas corpus* relief.[15] In support of his application, petitioner claims:

1.     Petitioner's rights were violated because his habitual offender proceedings were not instituted by grand jury indictment and he was not afforded a jury trial in those proceedings;

2.     There was insufficient evidence to support petitioner's habitual offender adjudication; and

3.     Petitioner received ineffective assistance of counsel at trial and on appeal.

---

[11]  State Rec., Vol. III of III.

[12]  State v. Williams, No. 2003-K-2044 (La. App. 4th Cir. Dec. 23, 2003) (unpublished); State Rec., Vol. III of III.

[13]  State Rec., Vol. III of III.

[14]  State *ex rel*. Williams v. State, 896 So.2d 51 (La. 2005) (No. 2004-KH-0259); State Rec., Vol. III of III.

[15]  Rec. Doc. 1.

<u>Timeliness</u>

The state argues that petitioner's federal application is untimely.[16]  This Court disagrees.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his conviction or sentence becomes "final."[17]  Under the AEDPA, a judgment is considered "final" upon the expiration of time for seeking direct review.  28 U.S.C. § 2244(d)(1)(A).

As noted, on February 14, 2003, the Louisiana Supreme Court denied petitioner's writ application challenging the intermediate appellate court's judgment affirming his conviction and sentence.[18]  Therefore, pursuant to 28 U.S.C. § 2244(d)(1)(A), petitioner's one-year period for seeking federal *habeas corpus* relief commenced on May 15, 2003, when his ninety-day period for filing a petition for a writ of certiorari with the United States Supreme Court expired.  <u>See</u> <u>Roberts v. Cockrell</u>, 319 F.3d 690, 694 (5th Cir. 2003); <u>Ott v. Johnson</u>, 192 F.3d 510, 513 (5th Cir. 1999); <u>Chester v. Cain</u>, Civ. Action No. 01-1958, 2001 WL 1231660, at *3-4 (E.D. La. Oct. 15, 2001); <u>see also</u> U.S. Sup. Ct. R. 13(1).[19]

---

[16]  Rec. Doc. 10.

[17]  Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are inapplicable in the instant case.

[18]  <u>State v. Williams</u>, 836 So.2d 135 (La. 2003) (No. 2002-KO-0174); State Rec., Vol. III of III.

[19]  The state argues that the statute of limitations commenced earlier because petitioner's writ application was not timely filed with the Louisiana Supreme Court.  This Court disagrees.  The Louisiana Fourth Circuit Court of Appeal affirmed petitioner's conviction and sentence on

The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. 28 U.S.C. § 2244(d)(2). Thirty-two (32) days of petitioner's one-year statute of limitations elapsed prior to being tolled by the filing of his post-conviction application on June 17, 2003. Although that application was denied, tolling continued uninterrupted during the period of appellate review, so long as petitioner sought such review in a timely manner. See Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-70 (5th Cir. 2004). There is no indication in the record that petitioner's related writ applications were untimely filed with either the Louisiana Fourth Circuit Court of Appeal or the Louisiana Supreme

---

November 7, 2001. Accordingly, he had thirty days from that date, i.e. until December 7, 2001, to file a Louisiana Supreme Court writ application challenging that judgment. Louisiana Supreme Court Rule X, § 5(a). The Court acknowledges that the writ application was stamped by the Louisiana Supreme Court as filed on January 17, 2002; however, this Court is also aware that the "file stamp" applied by the Louisiana Supreme Court bears no relation whatsoever to the date that court actually receives such documents for filing. In the instant case, the writ application was mailed from the prison in an envelope bearing a postage meter date of December 4, 2001. See State Rec., Vol. I of III, letter from the Louisiana Supreme Court Clerk dated January 17, 2001. Moreover, the envelope bears a "receipt stamp," presumably applied by the Louisiana Supreme Court, evidencing receipt in early December. State Rec., Vol. III of III. Although that "receipt stamp" is partially illegible, it is clear that first digit of the two-digit date is "0." Therefore, it had to be received before December 10. Moreover, in that December 8 and 9 fell on a weekend in 2001, it must have been received for filing, at the latest, on December 7, 2001, within the filing deadline.

Court.[20]   Accordingly, the statute of limitations remained tolled from June 17, 2003, until the Louisiana Supreme Court denied the related writ application on March 11, 2005.[21]

At that point, petitioner had three hundred thirty-three (333) days of the statute of limitations remaining.  Because he filed his federal application on April 11, 2005,[22] a mere thirty-one (31) days later, it was timely filed.  In light of that fact, and the fact that the state concedes that petitioner exhausted his state court remedies,[23] the Court will address the merits of petitioner's claims.

<u>Standard of Review</u>

The AEDPA comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that

---

[20]   The state again argues that the Louisiana Supreme Court filing was untimely; however, this Court again disagrees.  Because the Louisiana Fourth Circuit Court of Appeal rendered its judgment on December 23, 2003, petitioner had until January 22, 2004, to file his Louisiana Supreme Court writ application.  Again, the writ application bears a meaningless Louisiana Supreme Court "file stamp" of January 27, 2004.  However, petitioner's writ application was mailed from the prison in an envelope bearing a postage meter date of January 16, 2004, and it bears a "receipt stamp" showing it was received on January 20, 2004, well before the filing deadline.  State Rec., Vol. III of III.

[21]   <u>State *ex rel*. Williams v. State</u>, 896 So.2d 51 (La. 2005) (No. 2004-KH-0259); State Rec., Vol. III of III.

[22]   Petitioner signed his federal *habeas corpus* application on April 11, 2005.  Rec. Doc. 1.  That date represents the earliest date that petitioner could have presented his application to prison officials for mailing and, therefore, the earliest date that this Court could deem his *habeas* petition to have been filed for statute of limitations purposes.  <u>Roberts v. Cockrell</u>, 319 F.3d 690, 691 n.2 (5th Cir. 2003).

[23]   Rec. Doc. 10, p. 2.

the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

<u>Facts</u>

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts

of this case as follows:

Officer George Jackson responded to a call of a stolen vehicle at approximately 4:15 p.m. on 14 February 1998.  When he arrived on the scene, he met with the victim in front of the victim's residence in the 7800 block of Lacombe Street.  The victim, John Taylor, Jr., informed Officer Jackson that he had been washing his truck in his front yard when two men approached him.  One of the men walked up to him and asked for a light for a cigarette.  The victim told the man that he did not have a lighter.  The second man told the first man to give him the cigarette.  At this point, the first man pulled out a gun and handed it to the second man.  The second man then yanked the victim out of his truck and stuck the gun in his side.  The first man told the second man to shoot the victim.  The two men then jumped into the victim's truck and drove off, heading north on Lacombe Street.  Officer Jackson canvassed the area, but was unable to locate the subjects.  He returned to the police station and put out a bulletin with descriptions of the truck and the two subjects.

Officer Rhonda Leach was on routine patrol with her partner on the evening of 14 February 1998.  While driving on Old Gentilly Road, she observed a truck with its lights on stopped in the middle of the street.  The officer blinked her vehicle's lights indicating to the driver of the other vehicle to either move or pull to the side of the street.  At that point, one of the passengers jumped out of the truck and ran into the bushes.  Officer Leach's partner exited the vehicle and approached the truck.  The driver of the truck put the vehicle in reverse and sped off at a high speed.   The officers pursued.  They observed that the license plate of the truck was one of the license numbers read during roll call as being recently stolen.   They apprehended the subject who ran into the bushes.  Officer Leach notified her ranking officer of the pursuit.  The driver of the truck drove the vehicle into a ditch and then started to run towards the woods.  The officers began a foot pursuit of the subject.  The subject was apprehended and taken to the Seventh District Police Station.  Officer Leach identified Williams as the subject she and her partner apprehended.  Officer Leach testified a bag containing a gun was found in the truck.

- 8 -

Officer Tracy Fulton assisted in the pursuit and apprehension of Williams. When he fled on foot, the officer established a perimeter in order to stop the fleeing subject. The officer apprehended the defendant behind a dumpster.

At approximately 4:30 p.m. on 14 February 1998, Margaret Taylor was getting ready for her son's birthday party when she heard a noise that sounded like a truck going fast down the street. She walked to the front of the house and heard someone banging on the door. When she opened the door, she saw her husband, who was upset and excited. She inquired why her husband was upset and then called 911. Mrs. Taylor identified her voice on a 911 audiotape played for the jury.

John Taylor, Jr. testified that on the afternoon of 14 February 1998, he was washing his truck in his front yard, when, at approximately 4:05 p.m., a black male approached him and asked for a light for a cigarette. Taylor told the man that he did not have a lighter. The man then walked to the rear of the truck and told a second black male that Taylor did not have a lighter. The first man told the second man to give him the cigarette. At that time, the second man gave the first man a semi-automatic pistol. The first man grabbed Taylor and shoved the gun into his chest. The gun was a blue steel semi-automatic pistol. The first man grabbed Taylor's pocket, which was empty. The second man told the first man to shoot Taylor. Taylor backed away from the vehicle. The two men jumped into Taylor's truck and took off. Taylor then went into his house, told his wife what happened, and called 911. Taylor testified that he recovered his truck the next day. A police officer called after midnight on 15 February 1998, and told him that they had found his truck. Taylor identified his truck and noted that the vehicle had been damaged. He identified Williams as the person who pointed the gun at him and took his truck.

Detective Byron Adams participated in the pursuit and apprehension of Williams. Detective Adams testified that the defendant was taken to the Seventh District Police Station after his apprehension and arrest, where he was photographed for a photographic lineup. The victim identified the defendant in the photographic lineup as the person who stole his truck. The officer found the defendant's wallet and a gun on the front seat of the truck.

Officer Angel Williams, a crime lab technician, took photographs and collected evidence from the scene on 15 February 1998. She took photographs of the vehicle and attempted to locate fingerprints on it. However, she could not find any fingerprints on

- 9 -

the vehicle.  The officer also found a weapon, a Larson pistol, on the scene.[24]

### Habitual Offender Proceedings

Petitioner argues that his rights were violated because his habitual offender proceedings were instituted by bill of information rather than grand jury indictment.  This argument clearly has no merit.  Neither the United States Constitution nor Louisiana law requires a grand jury indictment to institute habitual offender proceedings.  See, e.g., Buckley v. Butler, 825 F.2d 895, 902-03 (5th Cir. 1987); Breland v. United States, 128 F.2d 795 (5th Cir. 1942); see also Minner v. Kerby, 30 F.3d 1311, 1318 (10th Cir. 1994); United States v. Ilacqua, 562 F.2d 399, 404 (6th Cir. 1977); United States v. Baca, 451 F.2d 1112, 1114 (10th Cir. 1971).

Petitioner also argues that he should have been afforded trial by jury in the habitual offender proceedings.  This contention also merits little consideration.  Again, it has been repeatedly and conclusively held that neither the United States Constitution nor Louisiana law requires a trial by jury for recidivist sentencing.  Buckley, 825 F.2d at 903; Clark v. Blackburn, 605 F.2d 163, 165-66 (5th Cir. 1979); State v. Dorthey, 623 So.2d 1276, 1279 (La. 1993) (a habitual offender proceeding is a hearing, not a trial, and the right to trial by jury does not apply); see also State v. Smith, 913 So.2d 836, 839-40 (La. App. 4th Cir. 2005); State v. Leblanc, 897 So.2d 736, 743-44 (La. App. 1st Cir. 2004), writ denied, 901 So.2d 1063 (La.), cert. denied, 126 S.Ct. 254 (2005); State v. Brooks, 889 So.2d 1064, 1068 (La. App. 5th Cir. 2004).

---

[24]  State v. Williams, No. 2000-KA-2148, pp. 2-4 (La. App. 4th Cir. Nov. 7, 2001) (unpublished); State Rec., Vol. II of III.

Petitioner also claims that there was insufficient evidence to support his habitual offender adjudication. The multiple bill of information alleged that petitioner had two prior convictions, i.e. that he pled guilty on January 20, 1994, to Possession of Marijuana (Second) and Possession of Cocaine in case number 365-684, and that he pled guilty on August 15, 1990, to Possession of Cocaine in case number 344-738. Petitioner contends that the state failed to prove that he was the same person who was convicted of those prior offenses.

The record reflects that a habitual offender hearing was held on July 7, 1999.[25] At that hearing, Officer Glen Burmaster testified for the state as a fingerprint expert. Burmaster testified that he had fingerprinted petitioner that day.

Regarding the 1994 conviction, Burmaster testified that he compared petitioner's fingerprints with the fingerprints found on a certified copy of an arrest register for petitioner dated April 25, 1993, reflecting charges for possession of marijuana and possession of cocaine, and that he found the fingerprints to be a match. The state then introduced a certified copy of a bill of information/conviction packet for case number 365-684 which showed that the arrest resulted in a conviction. The bill of information/conviction packet bore petitioner's name, as well as the same charges, the same arrest date, and the same unique arrest number as the arrest register bearing his fingerprints.

Regarding the 1990 conviction, Burmaster testified that he compared petitioner's fingerprints with the fingerprints found on a certified copy of an arrest register for petitioner dated July 13, 1990, reflecting a charge for possession of crack cocaine with intent to distribute, and that

---

[25] State Rec., Vol. II of III, transcript of July 7, 1999.

he again found the fingerprints to be a match.  The state then introduced a certified copy of a bill of information/conviction packet for case number 344-738 which showed that the arrest resulted in a conviction.  The bill of information/conviction packet bore petitioner's name and the same unique arrest number as the arrest register bearing his fingerprints.

There is no merit to petitioner's challenge to the method used to prove that he is the same person convicted of the prior offenses, i.e. establishing that his fingerprints match those on an arrest register and then linking that arrest register to conviction records with matching information.  It is clear that method of proof is sufficient under Louisiana law.  For example, that exact method has been cited with approval:

> Appellate counsel argues that proof of identity may not be established through use of fingerprints on an arrest register, despite numerous decisions to the contrary.  To prove a defendant is a habitual offender under La. R.S. 15:529.1, the State is required to establish the felony conviction and that the defendant is the same person convicted of that felony.  Proof of identity can be established through a number of ways, such as the testimony of witnesses to prior crimes, expert testimony matching the fingerprints of the accused with those in the record of the prior proceeding, or photographs contained in a duly authenticated record.  It is sufficient to match fingerprints on an arrest register to a defendant, and then match the arrest register to a bill of information and other documents evidencing conviction and sentence; this can be done through a date of birth, social security number, bureau of identification number, case number, specifics and details of the offense charged, etc.

State v. Williams, 788 So.2d 515, 530 (La. App. 4th Cir. 2001) (footnote and citations omitted); see also State v. Payton, 810 So.2d 1127, 1130-32 (La. 2002); State v. Smith, 913 So.2d 836, 841 (La. App. 4th Cir. 2005).  Petitioner's contention that his fingerprints must also appear on the bills of

information relating to the prior convictions is simply wrong. <u>Payton</u>, 810 So.2d at 1132; <u>Williams</u>, 788 So.2d at 530-31.

Accordingly, for the foregoing reasons, the Court finds that all of petitioner's claims relating to the habitual offender proceedings should be rejected.

Ineffective Assistance of Counsel

Petitioner claims that both his trial counsel and his appellate counsel were ineffective. In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. <u>See id</u>. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. <u>See Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. <u>See Strickland</u>, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (quoting <u>Strickland</u>, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. <u>See Crockett v. McCotter</u>, 796 F.2d 787, 791 (5th Cir. 1986); <u>Mattheson v. King</u>, 751 F.2d 1432, 1441 (5th Cir. 1985).

The appropriate standard for determining prejudice varies slightly depending on whether the petitioner is challenging the actions of trial or appellate counsel.  In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.  In order to prove prejudice with respect to a claim that appellate counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation. Briesno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286 (2000).  Therefore, petitioner must demonstrate a reasonable probability that if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error.  Briesno, 274 F.3d at 210.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim.  Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  Strickland, 466 U.S. at 697.

- 14 -

A claim of ineffective assistance of counsel is a mixed question of law and fact. <u>Moore v. Cockrell</u>, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must defer to the state court on such claims unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

Petitioner alleges that his trial counsel was ineffective in numerous respects.  The Court will address each of those allegations.

First, petitioner contends that his counsel was ineffective in failing to investigate the case and prepare and present a proper defense.  Petitioner claims that if his counsel had performed an adequate investigation, he would have learned that petitioner was a drug addict whose addiction "was severe, so extremely severe that he could not be held responsible for his actions."[26]  He argues that "[c]ounsel could have introduced evidence of the long history of drug use, counsel could have introduced expert testimony form [sic] physicians to prove to the jury that the addiction was so severe that Williams could not even formulate specific intent at the time of the commission of this crime."[27]  Those contentions fail for several reasons.

As an initial matter, the Court notes that petitioner has provided nothing but bare allegations that he was in fact a drug addict.  That is insufficient.  A petitioner asserting a claim for inadequate investigation bears the burden to provide factual support for his allegations as to what further investigation would have revealed.  <u>Moawad v. Johnson</u>, 143 F.3d 942, 948 (5th Cir. 1998).

---

[26]  Rec. Doc. 1, supporting memorandum, p. 14.

[27]  Rec. Doc. 1, supporting memorandum, p. 14.

Moreover, in any event, even if the Court assumes that an investigation would have revealed that petitioner was in fact a drug addict, his claim has no merit for the following reasons.

To the extent that petitioner is contending that his drug addiction constituted a mental disease or defect that would exempt him from criminal responsibility, he has fallen far short of his burden to establish that fact.  Louisiana law provides:

> If the circumstances indicate that because of a mental disease or defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility.

La.Rev.Stat.Ann. § 14:14.  However, "[c]riminal responsibility is not negated merely by the existence of a mental disease or defect ...."  State v. Williams, 346 So.2d 181, 186 (La. 1977).  A mental disease or disorder short of legal insanity is insufficient to support such a defense.  Id.; see also State v. Koon, 704 So.2d 756, 768 (La. 1997); State v. Weber, 364 So.2d 952, 956 (La. 1978).  Petitioner has made no allegation, much less met his burden to prove, that his alleged drug addiction, if any, was so severe as to render him incapable of distinguishing between right and wrong with respect to his criminal conduct.[28]

Moreover, to the extent that petitioner is perhaps alleging that he was using drugs at the time of the offense and, as a result, was incapable of forming specific intent to commit the crime,

---

[28]  To the extent that petitioner is arguing that expert testimony should have been used to establish the severity of his addiction, his bare allegation is insufficient to support his claim.  The United States Fifth Circuit Court of Appeals has noted that "unsupported claims regarding [an] uncalled expert witness are speculative and disfavored by this Court as grounds for demonstrating ineffective assistance of counsel." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002).  In this case, petitioner has not met his burden to show what an expert would have found and that those results would have been favorable to him.  See id.

that claim is also clearly meritless.  Under Louisiana law, armed robbery requires only general, not specific, intent.  See, e.g., State v. Magee, 916 So.2d 1178, 1184 (La. App. 5th Cir. 2005); State v. Bowers, 909 So.2d 1038, 1045 (La. App. 2nd Cir. 2005); State v. Doucet, 638 So.2d 246, 248-49 (La. App. 3rd Cir. 1994); State v. Payne, 540 So.2d 520, 523 (La. App. 1st Cir. 1989).  State law further provides that a voluntary intoxicated or drugged condition is not a defense to crimes requiring only general intent.  La.Rev.Stat.Ann. § 14:15; State v. Scott, 344 So.2d 1002, 1005 (La. 1977); State v. Taylor, 802 So.2d 779, 783 (La. App. 5th Cir. 2001).

For the foregoing reasons, a defense under either La.Rev.Stat. Ann. § 14:14 or 15 would have had no merit.  Counsel cannot be found ineffective for failing to raise meritless defenses. See, e.g., Krist v. Foltz, 804 F.2d 944, 946 (6th Cir. 1986) ("An attorney is not required to present a baseless defense or to create one that does not exist."); United States v. Washington, Cr. A. 95-124-3 and Civ. A. 97-2371, 1997 WL 327459, at *2 (E.D. Pa. June 12, 1997) (counsel is not ineffective in failing to raise a meritless defense, because the outcome of the proceeding would not have been different if the defense had been raised).

Second, petitioner contends that his counsel was ineffective in erroneously advising him that he did not face life imprisonment as a habitual offender.  Petitioner claims:  "Had counsel adequately advised Williams of the penalty he faced if billed [as a habitual offender] he would have accepted a deal with the prosecution."[29]

The United States Fifth Circuit Court of Appeals has held:

---

[29]  Rec. Doc. 1, supporting memorandum, p. 15.

> Failing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by Strickland.  When the defendant lacks a full understanding of the risks of going to trial, he is unable to make an intelligent choice of whether to accept a plea or take his chances in court.

Teague v. Scott, 60 F.3d 1167, 1171 (5th Cir. 1995).  However, the United States Tenth Circuit Court

of Appeals recently addressed that issue and held:

> There is no per se rule that an attorney's failure to investigate independently his client's criminal history before advising him to accept a plea offer is ineffective assistance.  Clients should answer truthfully their attorney's inquiries about their past convictions, and lawyers are entitled to rely reasonably on the explicit representations of clients about their criminal histories.  See Strickland, 466 U.S. at 691, 104 S.Ct. 2052 (explaining that counsel need not undertake investigations if they reach "a reasonable decision that makes particular investigations unnecessary").  We agree with one of our sister circuits that "a determination of whether reliance on a client's statement of his own criminal history constitutes deficient performance depends on the peculiar facts and circumstances of each case." United States v. Pease, 240 F.3d 938, 941-42 (11th Cir. 2001).  See also Strickland, 466 U.S. at 691, 104 S.Ct. 2052 ("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."); United States v. Russell, 221 F.3d 615, 621 (4th Cir. 2000) ("When representing a criminal client, the obligation to conduct an adequate investigation will often include verifying the status of the client's criminal record, and the failure to do so may support a finding of ineffective assistance of counsel.").

United States v. Colon-Torres, 382 F.3d 76, 86-87 (10th Cir. 2004).

In the instant case, there is no evidence in the record of what investigation, if any,

counsel independently conducted regarding petitioner's criminal past.  There is also no evidence

regarding whether counsel asked petitioner about his criminal history and, if so, what petitioner

revealed.  However, more importantly, petitioner has not met his initial, critical burden of proof with

- 18 -

respect to this claim, i.e. that counsel in fact advised petitioner that he would not be subject to a life sentence if a multiple bill of information was filed against him.  Petitioner has presented no evidence whatsoever in support of this allegation, such as an affidavit from counsel that he gave such advice or an affidavit from a third person who overheard such a statement.  Petitioner offers nothing more than his own bare, self-serving allegations.

Moreover, even if petitioner provided such evidence and the Court were to conclude that counsel performed deficiently, petitioner still would not be entitled to relief unless he can show that he was prejudiced by that deficient performance.  In the context of a claim such as this, "[u]nder the Strickland test, the defendant must show that there was a reasonable probability that his counsel's errors resulted in a sentence that was significantly more severe." Teague, 60 F.3d at 1172. In this case, petitioner was a career criminal and it was clear, based on the overwhelming evidence at its disposal, that the state should be able to secure a conviction on the current charge. Considering those facts, it is at least questionable whether the state would have been amenable to a plea agreement.  In any event, petitioner, who bears the burden of proof in these proceedings, has presented no evidence that such a plea bargain was ever offered.  As a result, he has not made the required showing that his resulting sentence was significantly more severe than he would have received but for counsel's alleged errors.  Therefore, he has not shown the prejudice required by Strickland, and his claim necessarily fails.

Third, petitioner contends that his counsel was ineffective in waiving an opening statement.  "The decision of whether to present an opening statement falls with the zone of trial strategy." Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984); see also United States v. Stedman,

69 F.3d 737, 740 (5th Cir. 1995); <u>Gilliard v. Scroggy</u>, 847 F.2d 1141, 1147 (5th Cir. 1988).  The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such matters through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.  <u>Strickland</u>, 466 U.S. at 689.  Moreover, in this case, where there was overwhelming evidence of petitioner's guilt and no viable defense, the strategy to waive an opening argument was clearly a sound one.  Under analogous circumstances, the United States Fifth Circuit Court of Appeals observed:

> It is next said that the attorney failed to make an opening statement to the jury.  Certainly, this was a matter of professional judgment, and in this kind of case was very likely the wiser course to follow.  The best hope of defense counsel on the facts here involved was to catch the prosecution asleep or lacking evidence at some fatal juncture of the trial.  It could well be considered that this was no time for defense counsel, at the very outset, in an opening statement to reveal the weak hand he had to play.

<u>Williams v. Beto</u>, 354 F.2d 698, 703 (5th Cir. 1965).

Fourth, petitioner alleges, without elaboration, that his counsel was ineffective in failing "to request a mistrial on juror (KIHNEL'S) statement."[30]  Although petitioner offers no further explanation of that claim, this Court can only assume that petitioner is referring to the following incident which occurred during voir dire:

THE FOLLOWING OBJECTIONS WERE MADE IN CHAMBERS
DURING THE JURY SELECTION OF THE FIRST JURY PANEL:

---

[30]  Rec. Doc. 1, supporting memorandum, p. 13.

BY MS. BARTHOLOMEW [prosecutor]:
     The state would like to challenge juror No. 3 for cause.

BY THE COURT:
     The challenge for cause is granted.

BY MR. CREECH [defense counsel]:
     I'd like to question him, judge.

JUROR NO. 1615, POSITION NO. 3, MR. EDMOND KIHNELS
CALLED INTO CHAMBERS.

BY THE COURT:
     There was some questions outside that the prosecutor was asking you and you had no comment.  Can you tell me why you can't comment on them?

BY MR. KIHNEL:
     Your Honor, I called the New Orleans Police Department up because of a situation at my house where I was robbed at my house. The police came out.  They didn't report it.  The officer wasn't wearing a name tag.  And he ticked me off.

BY THE COURT:
     I hear you.

BY MR. KIHNEL:
     All right.  If you want to play games, you can go on the football field and play games.

BY THE COURT:
     I hear you.

BY MR. KIHNEL:
     There's more to it than that.

BY THE COURT:
     I understand.  You've said enough for our purposes.  Mr. Creech.

BY MR. KIHNEL:
     I want to be excused from the trial.

BY THE COURT:
      I understand.  Do you have any questions?

BY MR. CREECH:
      No, sir.

MR. KIHNEL STEPPED BACK OUTSIDE.

BY MR. CREECH:
      Your Honor, I'm going to object to the challenge for cause. It's very clear the man is angry.  But he said he didn't want to be on this jury.  I don't think just because he doesn't want to be a juror is a reason to let him off.  A lot of people don't want to be a juror.

BY THE COURT:
      Well because of his whole demeanor and his attitude, I'm going to excuse him from the panel.  I may get up the nerve to talk to him some more about it.  But I'm going to excuse him.  I note an objection on behalf of the defendant.  I grant the challenge for cause.[31]

  As noted, petitioner contends that his counsel was ineffective in failing to request a mistrial based on Kihnel's statements.  There are several grounds for mistrial which are recognized by Louisiana law.  See La. Code Crim. P. arts. 770, 771, and 775.  However, there is nothing in the above-quoted exchange, which is the only reference in the transcript to a juror named Kihnel, which would justify the granting of a mistrial under those articles.  Kihnel's comments took place in chambers, outside of the hearing of the other members of the jury venire.  Moreover, there is nothing in those comments which could be considered prejudicial to the defendant.  Therefore, there was simply no legal basis for counsel to move for a mistrial based on Kihnel's comments.  Accordingly, counsel cannot be deemed deficient in failing to do so and petitioner can show no prejudice.  See

---

[31]  State Rec., Vol. II of III, transcript of May 24, 1999, pp. 7-9.

United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions."); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); Sones v. Hargett, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."); Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

Fifth, petitioner contends that his counsel was ineffective in failing to have him testify.  Again, a decision whether to put a criminal defendant on the stand "is a 'judgment call' which should not easily be condemned with the benefit of hindsight."  United States v. Garcia, 762 F.2d 1222, 1226 (5th Cir. 1985); see also United States v. Mullins, 315 F.3d 449, 453 (5th Cir. 2002), cert. denied, 541 U.S. 1031 (2004).  In this case, petitioner opines that surely the jury would have wanted to know why his wallet was found in the stolen vehicle, why he was identified by the victim as the perpetrator, and why he was identified by the arresting officer as the person caught fleeing from the stolen vehicle.  This Court would agree that exculpatory explanations on those points would have been of interest, if in fact he had such explanations.  However, apparently he did not. Petitioner offers no suggestion in his petition as to how he would testified so as to rebut this overwhelming, damning evidence against him.  Apparently, petitioner would have either told the truth, admitting his participation in the crime, or told an implausible lie.  In either event, his testimony would have aided the prosecution with no apparent benefit whatsoever to the defense.

- 23 -

Accordingly, petitioner has failed to meet his burden to demonstrate that counsel performed deficiently in failing to have him testify or that he was in any way prejudiced.

To the extent that petitioner is claiming that he wanted to testify but his counsel refused to let him, that claim also fails. "[I]t cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." Rock v. Arkansas, 483 U.S. 44, 49 (1987). However, petitioner has offered no proof whatsoever that counsel in fact prevented him from testifying.

This Court has reviewed the trial transcript and there is no mention of petitioner's purported desire to testify at trial. Of course, the mere fact that petitioner failed to stand up in open court and insist on testifying should not be dispositive of the issue. See United States v. Mullins, 315 F.3d 449, 455 (5th Cir. 2002); see also United States v. Araujo, 77 Fed. App'x 276 (5th Cir. 2003), cert. denied, 543 U.S. 849 (2004). Nevertheless, the Court cannot ignore the fact that petitioner has never presented anything whatsoever either to the state courts or to this Court to corroborate his allegations. Without more, petitioner's bare allegations are insufficient to trigger either further fact-finding by this Court or the granting of relief. As the United States Seventh Circuit Court of Appeals noted in a case in which a petitioner alleged that he had been denied the right to testify by his counsel:

> There is grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right (that is, a right not waivable by counsel) to testify on his own behalf without rendering the criminal process unworkable. It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen. Yet it is simple enough after being convicted for the defendant to say, "My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial." ...

- 24 -

> ... [A] barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary – and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify – to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

Underwood v. Clark, 939 F.2d 473, 475-76 (7th Cir. 1991).

For all the foregoing reasons, the Court finds that petitioner has utterly failed to meet his burden of proof with respect to any of his claims that his trial counsel was ineffective.

The Court likewise rejects petitioner's claim that his appellate counsel was ineffective. Petitioner argues that appellate counsel should have asserted additional assignments of error challenging petitioner's conviction and habitual offender adjudication or should have filed an Anders brief. That claim simply has no merit.

As a preliminary matter, the Court notes that Anders v. California, 386 U.S. 738 (1967), is inapplicable. Anders requires that when counsel determines an appeal to be wholly frivolous, he must request permission to withdraw and file a brief "referring to anything in the record that might arguably support the appeal." Id. at 743. Anders, however, is inapplicable when, as here, counsel does not seek to withdraw but instead advances claims on appeal. Clements v. Cain, Civil Action No. 98-0471, 1998 WL 676924, at *5-6 (E.D. La. Sept. 30, 1998) (Anders inapplicable where appellate counsel asked for an errors patent review and challenged the sentence as excessive).

Petitioner's appellate counsel reviewed petitioner's case and filed a brief challenging petitioner's habitual offender adjudication and requesting an errors patent review.[32]

Petitioner essentially argues that appellate counsel should have raised on appeal many of the same claims petitioner asserts in this petition.  In cases where a claim for ineffective assistance of appellate counsel arises out of an alleged failure to raise certain issues on appeal, courts employ a Strickland-based analysis.  Hamilton v. McCotter, 772 F.2d 171, 181-82 (5th Cir. 1985).

It must be noted that an appellate counsel's performance is not rendered deficient merely because he fails to raise every argument desired by his client.  "Counsel is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)."  West v. Johnson, 92 F.3d 1385, 1396 (5th Cir. 1996).  As the United States Supreme Court has noted, "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  Jones v. Barnes, 463 U.S. 745, 751-52 (1983).  Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions."  Id. at 753.

In any event, as this Court has noted previously in this opinion, petitioner has failed to demonstrate that his underlying claims have any merit whatsoever.  Therefore, petitioner has not

---

[32] Petitioner alleges that his counsel did not request an errors patent review.  That is untrue. Counsel requested such review on page 8 of her brief.  State Rec., Vol. II of III.

Additionally, petitioner was allowed to file a supplemental *pro se* brief asserting six assignments of error, all of which were considered and rejected by the Court of Appeal.

demonstrated that his counsel performed deficiently when he failed to raise those claims on appeal. Additionally, petitioner has not met his burden to prove resulting prejudice by establishing that he would have prevailed on appeal if his counsel had asserted those claims.  Briesno, 274 F.3d at 210; see also Smith v. Robbins, 528 U.S. 259, 285 (2000).

Accordingly, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  Applying the AEDPA's deferential standard, this Court rejects petitioner's ineffective assistance of counsel claims.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the federal petition for *habeas corpus* relief filed by Auther Williams be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this _____7th_____ day of April, 2006.



      **SALLY SHUSHAN**
      **UNITED STATES MAGISTRATE JUDGE**